El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
Johnson & Johnson International, Inc. (J&J) suscribió un contrato con el Municipio de San Juan (Municipio) so-bre el arrendamiento de un equipo médico para realizar ciertas pruebas químicas que se llevarían a cabo en el Hospital Municipal de San Juan. En el contrato se pactó, ade-más, que J&J supliría los reactivos químicos necesarios para realizar hasta un máximo de 600,000 pruebas al año con ese equipo. El canon de arrendamiento de la maquina-ria era de $15,000 mensuales. Por último, el contrato dis-puso que, de comprarse pruebas adicionales, éstas serían a *844 razón de treinta y tres centavos la prueba y debían adqui-rirse mediante órdenes separadas.
Posteriormente, J&J le envió una factura al Municipio por $132,716.10, correspondiente a las pruebas que el Hospital Municipal de San Juan llevó a cabo en exceso de las 600,000 incluidas en el contrato. Ante la falta de pago del Municipio, el 3 de enero de 2001, J&J presentó una de-manda para el cobro del dinero y por incumplimiento de contrato en el Tribunal de Primera Instancia, Sala Superior de San Juan. En la demanda alegó que entre julio de 1998 a junio de 1999 el Hospital llevó a cabo 402,170 prue-bas en exceso de las seiscientas mil que incluía el contrato, a treinta y tres centavos cada una, lo cual asciende a la cantidad de $132,716.10. Señaló, además, que el Municipio le adeudaba el canon de $15,000 correspondiente a enero de 1996 y $3,988.24 por artículos necesarios para el uso y mantenimiento del equipo arrendado.
En su contestación a la demanda, el Municipio admitió que existía la cláusula en el contrato sobre el pago de las pruebas realizadas en exceso de 600,000, mas sin embargo, negó adeudar la cantidad reclamada por J&J. Indicó que las actuaciones no autorizadas de funcionarios municipa-les no obligan al Municipio y que cualquier transacción entre el Municipio y J&J no tiene fuerza vinculante en ausencia de un contrato por escrito.
J&J presentó una moción para solicitar que se dictase una sentencia sumaria. En la moción alegó que no existía controversia sobre el hecho de que se cobrarían treinta y tres centavos por cada prueba adicional realizada y que el Municipio así lo había admitido en su contestación a la demanda. Argumentó que el Municipio, mediante carta, re-conoció la validez de la deuda en tanto justificó el exceso de reactivos ordenados. En cuanto al canon de $15,000 alega-damente adeudado y a los $3,988.24 de materiales, adujo que según el contrato y la prueba documental provista, era evidente que el Municipio también adeudaba las cantida-des referidas.
*845 El Municipio se opuso a la solicitud de la sentencia su-maria de J&J y, por su parte, presentó una moción de sen-tencia sumaria, en la cual solicitó la desestimación de las causas de acción en su contra. En la moción el Municipio adujo que: nunca se realizaron las órdenes de compra por separado para las pruebas en exceso de 600,000 pruebas dispuestas en el contrato; no se suscribió un contrato por separado ni se enmendó el contrato vigente para realizar las pruebas en exceso y, por ende, no se cumplieron con los requisitos de contratación aplicables según la Ley de Mu-nicipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos) y su jurispru-dencia interpretativa. Adujo, además, que no existía un partida presupuestaria para cubrir las pruebas en exceso y que éstas no fueron aprobadas por el Alcalde o la Asamblea Municipal.
El 23 de agosto de 2004, notificada el 2 de septiembre del mismo año, el tribunal de instancia emitió una senten-cia sumaria a favor de J&J. En ésta, le ordenó al Municipio que pagara el total de las reclamaciones ascendiente a $151,704.34, más las costas, los intereses y honorarios de abogado.
El 28 de septiembre de 2004, el Municipio solicitó la reconsideración de la sentencia sumaria.(1) El 4 de noviem-bre de 2004, el tribunal de instancia emitió una orden, en la cual acogió, en parte, algunos de los planteamientos del Municipio. A tales efectos, el tribunal dejó sin efecto la sen-tencia sumaria en cuanto al canon de arrendamiento de $15,000 relacionado a junio de 1998 y la suma de $3,988.24 sobre los materiales que, según el contrato, eran necesa-rios para el uso y mantenimiento del equipo, sobre lo cual *846 determinó que se celebraría una vista plenaria.(2) Por otro lado, el foro primario denegó la reconsideración, en cuanto a la procedencia del pago por las pruebas realizadas en exceso de las 600,000 que incluía el contrato. En cuanto a esto expresó:
[S]e declara sin lugar la reconsideración presentada por en-tender que no existe controversia de hecho alguna que impida la adjudicación de dicho reclamo por la vía sumaria y por estar convencidos de que la norma de derecho aplicada fue la correcta.(Enfasis suplido.) Apéndice del Recurso de certiorari, pág. 146.
En vista de ello, el tribunal de instancia dictó una sen-tencia sumaria parcial al respecto y ordenó que la sentencia se registrara y se archivara. Dicha orden se notificó el 5 de noviembre de 2004.
Inconforme con la determinación, el 3 de enero de 2005 el Municipio acudió mediante “Recurso de certiorari” ante el Tribunal de Apelaciones. Alegó que el tribunal de instancia incidió al imponerle el pago de las 402,170 pruebas realiza-das, en exceso de las 600,000, y al no desestimar la alega-ción en cuanto a los $3,988.24 por los materiales utilizados para realizar las pruebas químicas adicionales.
J&J presentó una moción de desestimación, en la cual adujo que el Tribunal de Apelaciones carecía de la jurisdic-ción para atender el recurso, porque el municipio había acudido pasado el término de treinta días para acudir ante dicho foro mediante certiorari. En síntesis, alegó que el tribunal de instancia había emitido una orden que no consti-tuía una sentencia parcial final, por lo que el Municipio contaba con treinta días para revisarla mediante un “cer-tiorari” y no sesenta días, término con el cual cuenta un municipio para acudir al Tribunal de Apelaciones me-diante un recurso de apelación.
*847 El 2 de febrero de 2005, el Tribunal de Apelaciones emi-tió una resolución en la cual acogió el recurso de certiorari presentado como de apelación por considerar que el Muni-cipio recurría de una sentencia final.
Por último, el 12 de septiembre de 2005 el Tribunal de Apelaciones emitió una sentencia en la cual revocó la de-terminación de si procedía el pago de las pruebas adicionales. Revocó, además, la partida de $3,988.24 sobre los materiales utilizados para las pruebas, pero confirmó la procedencia del canon de arrendamiento de la maquinaria para jimio de 1998.
De dicha determinación, J&J acudió ante este Tribunal —vía certiorari— y adujo que el Tribunal de Apelaciones incidió
... al no desestimar por tardío el recurso presentado como uno de certiorari acogiendo el mismo como apelación y dictando Sentencia.
... al resolver que el Contrato suscrito entre Johnson & Johnson y el Municipio requería que las pruebas en exceso se veri-ficaran con órdenes de compra por escrito y firmadas por fun-cionario autorizado no obstante a que el contrato no contiene disposición alguna al respecto.
... al resolver que el alegado incumplimiento contractual en cuanto a no verificar las pruebas en exceso mediante órdenes de compra por escrito y firmadas por funcionario autorizado constituye una violación estaturia que hace nula la obligación contraída por el Municipio en cuanto al pago por dichas pruebas.
... En la alternativa, erró el TAen resolver que no procedía la aplicación de la doctrina de enriquecimiento injusto contra el Municipio no obstante a que conforme a los hechos particula-res del presente caso se justificaba la aplicación de dicha doc-trina tratándose de un caso donde el Municipio había aceptado haber llevado a cabo las pruebas en exceso objeto de cobro por Johnson & Johnson según contratado y no hay prueba [al]guna de violación de ley o esquema contrario a la mejor administración pública. Recurso de certiorari, pág. 7.
Expedimos el recurso. Estando en posición de resolverlo, procedemos a así hacerlo.
*848 I
La Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, define lo que constituye una “sentencia” en nuestro ordenamiento jurídico. A estos efectos, dispone que “[e]l término ‘sentencia’ incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse”. íd. Dicho de otra forma, una sentencia “ ‘pone fin a la controversia existente entre las partes mediante una adjudicación final’ ”. García v. Padró, 165 D.P.R. 324, 332 (2005), citando a U.S. Fire Insur. Co. v. A.E.E., 151 D.P.R. 962, 967 (2000). Véanse: Román et al. v. K-mart Corp. et al., 151 D.P.R. 731 (2000); Rodríguez v. Tribl. Mpal. y Ramos, 74 D.P.R. 656 (1953).
Sobre el particular, también hemos expresado que una sentencia es final si resuelve definitivamente el caso en sus méritos, de forma tal que sólo queda pendiente la eje-cución de la sentencia. García v. Padró, ante; Feliberty v. Soc. de Gananciales, 147 D.P.R. 834 (1999); Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642 (1987); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986).
De otra parte, hemos expresado que una “resolución” es un dictamen que pone fin a un incidente dentro del proceso judicial. Sabemos que el nombre no hace la cosa, por ello es necesario examinar la determinación del foro de instancia para asegurarnos si ésta constituye una resolución revisable, mediante certiorari o si se trata de una sentencia, la cual es apelable. García v. Padró, ante; U.S. Fire Insur. Co. v. A.E.E., ante; Román et al. v. K-mart Corp. et al., ante.
Por otro lado, según la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, si un pleito consiste de múltiples reclamaciones o partes, el foro de instancia puede dictar una sentencia final, en cuanto a una de las reclamaciones o una de las partes en particular. En cuanto a ello, *849 dispone que esto es posible “siempre que [el tribunal] con-cluya expresamente que no existe razón para posponer dic-tar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresa-mente que se registre la sentencia”. íd.
En otras palabras, para que se entienda que un tribunal ha dictado una sentencia parcial final, según la Regla 43.5, ante, ésta debe concluir expresamente que no existe razón para posponer el dictamen de una sentencia sobre la recla-mación y tiene que haber ordenado expresamente que esta se registre. U.S. Fire Insur. Co. v. A.E.E., ante. “Así pues, tratándose de una sentencia final —aunque parcial— tan pronto es archivada en autos copia de su notificación, co-mienzan su decurso los términos preceptuados en las Re-glas de Procedimiento Civil para la presentación de mocio-nes y recursos post sentencia.” Rosario et al. v. Hosp. Gen. Menonita, Inc., 155 D.PR. 49, 57 (2001). De no cumplir con estos requisitos, la sentencia es parcial y de carácter interlocutorio. U.S. Fire Insurance Co. v. A.E.E., ante.
Una vez se notifica y se archiva en autos una copia de una sentencia final, el término para apelar ante el Tribunal de Apelaciones comienza a transcurrir. La Regla 53.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que dicho término es de treinta días, contado desde el archivo en autos de la copia de la notificación de la sentencia.
No obstante, si alguna de las partes en el pleito es el Estado Libre Asociado de Puerto Rico, sus funcionarios, los municipios, o una de sus agencias que no sea una corpora-ción pública, la regla concede un término de sesenta días para apelar. Como es sabido, este término es de carácter jurisdiccional. En otras palabras, pasados los días para presentar un escrito de apelación, la sentencia del tribunal de instancia se convierte en final y firme, y la parte pierde su oportunidad para apelar.
De otra parte, cuando lo que se quiere revisar ante el Tribunal de Apelaciones es una resolución interlo- *850 cutoria, la revisión se tiene que presentar en el término de treinta días siguientes a la fecha de notificación de la reso-lución u orden recurrida. “Dicho término es de cumpli-miento estricto, prorrogable sólo cuando mediaren circuns-tancias especiales debidamente justificadas en la solicitud de certiorari.” 32 L.P.R.A. Ap. IIII, R. 53.1(d)(4).
Los tribunales tienen la discreción para extender un término de cumplimiento estricto únicamente cuando la parte demuestra una causa justa para la dilación. A estos efectos, los tribunales deben tomar en consideración dos elementos: (1) que en efecto existe justa causa para la dilación y (2) que la parte interesada acredite de manera adecuada la causa justa. Rojas v. Axtmayer Ent., Inc., 150 D.P.R. 560 (2000); Arriaga v. F.S.E., 145 D.P.R. 122 (1998); S.L.G. Szendrey v. F. Castillo, 169 D.P.R. 873 (2007). En ausencia de ello, los tribunales carecen de discreción para extender el término y acoger el recurso ante su consideración. Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651 (1997); S.L.G. Szendrey v. F. Castillo, ante.
II
J&J aduce que el Municipio acudió a destiempo al Tribunal de Apelaciones por haber presentado un recurso de certiorari el 3 de enero de 2005, pasados los treinta días para acudir. Alega que el Tribunal de Primera Instancia emitió una sentencia sumaria parcial, no final, el 4 de no-viembre de 2004, notificada el 5 de noviembre del mismo año. Por ende, sostiene que ésta sólo era revisable me-diante certiorari dentro del término de treinta días el cual venció el lunes, 6 de diciembre de 2004.
La orden emitida por el foro primario atendió la moción de reconsideración instada por el Municipio relacionada a la sentencia sumaria emitida anteriormente por ese foro. En su orden, el tribunal de instancia dejó sin efecto su determinación previa en cuanto al canon mensual de $15,000 y sobre la partida de $3,988.24 por alegados ma- *851 teriales necesarios para el mantenimiento del equipo. Ahora bien, dicho foro denegó la solicitud de reconsidera-ción sobre su determinación sobre la imposición de la par-tida por las pruebas hechas en exceso de 600,000. En cuanto a esa determinación, concluyó que no existía con-troversia de hecho alguna que impidiera la adjudicación de dicho reclamo por la vía sumaria. En vista de ello, ordenó que ésta se registrara y se notificara.
No hay duda de que la actuación del foro primario equi-vale a la emisión de una sentencia parcial final en cuanto a la partida de las pruebas hechas en exceso, pero no así en cuanto a las demás partidas, para las cuales ese foro deter-minó la necesidad de celebrar una vista plenaria para resolver en cuanto a éstas. Dicho de otra manera, relativo a la partida reclamada por las pruebas en exceso, el tribunal de instancia cumplió con los requisitos exigidos por la Re-gla 43.5 de Procedimiento Civil, supra, relacionados con la sentencia parcial final, revisable mediante apelación. A saber, concluyó expresamente que no existía razón para pos-poner el dictamen de una sentencia sobre la reclamación y ordenó expresamente que se registrara. Así pues, el Muni-cipio contaba con sesenta días para revisar este dictamen mediante un recurso de apelación y, por ende, presentó el recurso para revisar la determinación sobre las pruebas en exceso de 600,000 en el término jurisdiccional.
No obstante, la determinación del foro primario en cuanto a los materiales necesarios para el mantenimiento del equipo y sobre el canon de arrendamiento, era de ca-rácter interlocutorio revisable mediante el certiorari, puesto que no dispuso de éstos de manera final, sino que ordenó la celebración de una vista plenaria. En cuanto a ellas, el tribunal de instancia expresó:
La determinación relacionada a si el cheque 00127141 de 27 de agosto de 1998 corresponde al pago del canon de junio de 1998 requiere se presente prueba en un juicio plenario para su adjudicación. Asimismo ocurre con el reclamo relacionado a los gastos por concepto de artículos comestibles y piezas necesa- *852 rias para el uso y mantenimiento del equipo. Apéndice del Re-curso de certiorari, pág. 148.
Quiere decir que en cuanto a esa determinación, y con-trario a la otra situación, el Municipio tenía treinta días para revisarla mediante certiorari. Habiéndose notificado la orden del tribunal de instancia el 5 de noviembre de 2004, el recurso de certiorari debió presentarse en o antes del 6 de diciembre de 2004. Es por ello que, en ausencia de una causa justa que excusara la dilación, el recurso ins-tando por el Municipio el 3 de enero de 2005 para revisar esas determinaciones ante el Tribunal de Apelaciones fue tardío. Es por ello que el foro apelativo intermedio carecía de jurisdicción para pasar juicio en cuanto a estas determinaciones.
III
A. Reiteradamente hemos establecido la necesidad de aplicar normas restrictivas en lo que a la contratación municipal se refiere. Ello en aras de promover la rectitud en la administración pública, lo cual está revertido del más alto interés público. Cordero Vélez v. Mun. de Guánica, 170 D.RR. 237 (2007); Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824 (1999).
Así, pues, el propósito de los estatutos que regulan la realización de obras y la adquisición de bienes y servicios para el Estado, sus agencias y dependencias, y los municipios, es la protección de los intereses y recursos fiscales del pueblo. De esta forma se evita el favoritismo, el dispendio, la prevaricación y los riesgos del incumplimiento. Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007); Lugo v. Municipio de Guayama, 163 D.P.R. 208 (2004); Hatton v. Mun. de Ponce, 134 D.P.R. 1001 (1994).
En vista de lo anterior, los municipios deben actuar conforme a los procedimientos establecidos por la ley y nuestra jurisprudencia interpretativa a la hora de des- *853 embolsar fondos públicos para pagar las obligaciones que éstos contraen. La Ley Núm. 18 de 30 de octubre de 1975 (2 L.P.R.A. see. 97 et seq.), según enmendada por la Ley Núm. 127 de 31 de mayo de 2004, le impone a las entida-des gubernamentales y municipales la obligación de man-tener un registro de los contratos que otorguen, como tam-bién deben remitir una copia de éstos a la Oficina del Contralor.(3) A estos efectos, la Sec. 1(a) de la Ley Núm. 18 (2 L.RR.A. sec. 97(a)) dispone, en lo pertinente:
Las entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción al-guna, mantendrán un registro de todos los contratos que otor-guen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o de la enmienda.
Reiteradamente hemos resuelto que para que los contratos otorgados por los municipios sean válidos, es indispensable que el contrato conste por escrito. Además, se tiene que mantener un registro fiel que establezca la existencia del contrato y se acredite la certeza de tiempo. Esto es, que se llevó a cabo y se otorgó quince días antes y que se remita copia del contrato a la Oficina del Contralor, salvo determinadas excepciones. Cordero Vélez v. Mun. de Guánica, ante; CMI Hospital v. Depto. de Salud, 171 D.RR. 313 (2007); Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37 (1988).
Una vez se cumplen con los requisitos expuestos, los contratos son válidos, exigibles y gozan de la publicidad requerida por nuestro ordenamiento jurídico para la sana administración de la política pública, en cuanto a la con-tratación municipal se refiere. Ello significa que el cumpli- *854 miento con estos requisitos valida las asignaciones de fon-dos hechas para los contratos municipales en el presupuesto del Municipio para cada año fiscal.
En cuanto al desembolso de fondos municipales, el Art. 8.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4354, dispone, en lo pertinente:
Las obligaciones y desembolsos de fondos públicos munici-pales sólo podrán hacerse para obligar o pagar servicios, su-ministros de materiales y equipo, reclamaciones o cuales-quiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas.
(a) Los créditos autorizados para las atenciones de un año fiscal específico serán aplicados exclusivamente al pago de gastos legítimamente originados e incurridos durante el res-pectivo año, o al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros del municipio durante dicho año.
(b) No podrá gastarse u obligarse en año fiscal cantidad al-guna que exceda de las asignaciones y los fondos autorizados por ordenanza o resolución para dicho año. Tampoco se podrá comprometer, en forma alguna, al municipio en ningún con-trato o negociación para pago futuro de cantidades que exce-dan a las asignaciones y los fondos. Estarán excluidos de lo dispuesto en este inciso los contratos de arrendamiento de pro-piedad mueble e inmueble y de servicios. (Enfasis suplido.)
Por ende, y según el artículo citado, un municipio por lo general no puede pactar el pago futuro de cantidades en exceso de la asignación presupuestada para un contrato en particular. Ello, no obstante, a manera de excepción, si un contrato es de arrendamiento de propiedad mueble o in-mueble o es un contrato de servicios, los municipios sí pue-den pactar un pago futuro que exceda la asignación original respecto a ese contrato.
Finalmente, resulta pertinente señalar que “cuando se trata de contratos municipales regidos especialmente por la Ley de Municipios Autónomos, la validez de los éstos tiene que determinarse considerando las disposiciones pertinentes a este estatuto especial, y no a la luz de *855 la teoría general de obligaciones y contratos del Código Civil”. Colón Colón v. Mun. de Arecibo, ante, pág. 725, Véanse: Cordero Vélez v. Mun. de Guánica, ante; Mun. de Ponce v. A.C. et al., 153 D.P.R. 1 (2000).
B. En el caso ante nuestra consideración no existe con-troversia alguna en cuanto a la validez del contrato sus-crito entre J&J y el Municipio de San Juan. El contrato cumple cabalmente con todos los requisitos en cuanto a la contratación municipal, según hemos requerido reiterada-mente. De hecho, el Municipio recurrido así lo reconoce.
No obstante, el Municipio arguye, básicamente, que no se cumplió con la condición incluida en la cláusula sobre las pruebas en exceso. Al respecto, alega que no se efectuó una orden de compra por separado, como requería la cláu-sula y que, además, ello conllevaba realizar una enmienda al contrato original, sujeta a los requisitos de contratación municipal, lo cual no ocurrió. Por ende, según el Municipio, como no existe asignación presupuestada para la deuda en exceso, la cláusula es nula y la deuda no es exigible.
Al acoger los planteamientos del Municipio, el Tribunal de Apelaciones sostuvo:
En este caso la relación contractual entre las partes requería las órdenes de compra por separado y, naturalmente, éstas tienen que emitirse por escrito a través de las personas auto-rizadas para ello. Es de esta manera que se puede constatar, verificar, auditar y controlar el uso de fondos públicos de ma-nera que los desembolsos estén conforme a las obligaciones incurridas y a los fondos disponibles. Apéndice del Recurso de certiorari, pág. 213.
No estamos de acuerdo. Primeramente, como reseñára-mos, el contrato cumplió con todos los requisitos que exige nuestro ordenamiento jurídico en lo que a la contratación municipal se refiere. Siendo ello así, sólo resta examinar la cláusula en controversia para determinar si lo pactado es válido conforme a la Ley de Municipios Autónomos.
J&J y el Municipio pactaron que cada prueba en exceso del máximo de 600,000 sería a razón de treinta y tres cen *856 tavos y que éstas se adquirirían mediante órdenes por separado. Específicamente, la cláusula dispone: “Purchase over 600,000 tests will be at $0.33 and should be purchase [sic] on separate orders.” Apéndice del Recurso de certio-rari, pág. 37. No hay duda de que las partes pactaron que de hacerse pruebas en exceso, se cobraría por ello.
Ahora bien, el Municipio sostiene que no se cumplió con la segunda parte de la cláusula que dispone que las pruebas en exceso deben adquirirse mediante órdenes por separado. Sabido es que, en materia de la interpretación de los contratos, nuestro ordenamiento civil establece que “si los términos de los contratos son claros y no dejan duda sobre la intención de los contratantes, se atenderá al sentido literal de sus cláusulas”. 31 L.P.R.A. see. 3471. Véase CNA Casualty of P.R. v. Torres Díaz, 141 D.P.R. 27 (1996). Así, los términos claros son “aquéllos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión, razonamientos o demostraciones susceptibles de impugnación”. Sucn. Ramírez v. Tribl. Superior, 81 D.P.R. 357, 361 (1959).
Una lectura de la cláusula en cuestión es todo lo que se necesita para concluir que ésta es clara y no impone con-diciones más allá de su fiel interpretación. La cláusula sólo le impone al Municipio el deber de ordenar por separado las pruebas en exceso. Aparte de ese requisito, la cláusula no especifica cómo se tenían que ordenar las pruebas. Ello quiere decir que, cuando la persona facultada por el Muni-cipio firmó el contrato, autorizó a que, de ser necesario, el Municipio ordenara pruebas en exceso de las 600,000 in-cluidas en el contrato independientemente de cómo las ordenara.
Lógicamente, si el contrato sólo disponía para la reali-zación de un máximo de 600,000 pruebas, para llevar a cabo pruebas en exceso de este número había que ordenar más reactivos. Obviamente, cada vez que se ordenaron reactivos para llevar a cabo las pruebas en exceso, éstas *857 constituían órdenes por separado. De otra manera, hubiese sido imposible llevar a cabo más pruebas de las pactadas.
Como prueba de lo expuesto, surge del expediente que el Municipio ciertamente ordenó las pruebas en exceso. Me-diante misiva de 30 de junio de 1999, la Leda. Nyrma Co-lón, Directora de Servicios de Laboratorio del Hospital Municipal de San Juan, le remitió a las Ledas. Carmen Graulau, Administradora de la Oficina Ejecutiva de Salud del Municipio de San Juan, y Maritza Espinoza, Directora Ejecutiva del Hospital Municipal de San Juan, la factura de J&J por los reactivos ordenados en exceso. Dicha carta expresa, en lo pertinente: “Adjunto factura de la Compañía Johnson & Johnson por concepto de exceso de reactivos pedidos en el año a los términos del contrato.” (Énfasis suplido.) Apéndice del Recurso de certiorari, pág. 159.
Es forzoso concluir, entonces, que cónsono con la cláu-sula incluida en el contrato entre J&J y el Municipio, este último ordenó los reactivos en exceso por separado, tal y como se había pactado. No puede ahora el Municipio obviar lo que claramente había acordado con J&J para así burlar la deuda acumulada. Decidir de otra manera provocaría desconfianza y desconcierto entre los entes privados a la hora de contratar con los municipios, en abierta contraven-ción a los postulados de nuestra política pública.
Ahora bien, ¿puede un Municipio obligarse al pago futuro de cantidades que excedan la asignación de un contrato en particular? La respuesta, de ordinario, es en la negativa. En cuanto a ello, el Art. 8.004(b) de la Ley de Municipios Autónomos, ante, expresamente prohíbe que los municipios se comprometan, mediante contrato u otro tipo de negociación, al pago futuro de obligaciones que ex-cedan a las asignaciones y a los fondos.
No obstante, esta disposición exceptúa de la prohibición a los contratos de arrendamiento de propiedad mueble e inmueble y a los contratos de servicios. Por esta razón, el Municipio no puede argüir que no existía asignación para el exceso de las seiscientas mil pruebas, provocando de esa *858 manera la nulidad de la cláusula. Toda vez que el contrato cumplió con los requisitos para la contratación municipal, existía la partida presupuestaria asignada. Por ello, la par-tida en exceso sí es exigible por J&J, ya que el contrato de arrendamiento del equipo de laboratorio cae dentro de la excepciones pautadas en el Art. 8.004 de la Ley de Munici-pios Autónomos, ante, a saber: es un contrato de arrenda-miento de un bien mueble, esto es, de un equipo médico.
Dicho de otra manera, en este caso no sólo las partes previeron que posiblemente se necesitaría ordenar pruebas en exceso de las incluidas en el contrato, sino que la ley mediante el artículo reseñado prevé que los contratos ex-ceptuados, por su naturaleza, pueden resultar en un des-embolso de fondos en exceso del presupuestado y asignado. Así, pues, ciertamente, la cantidad adeudada por el Muni-cipio a J&J es exigible.
Por los fundamentos expuestos, procede revocar la sen-tencia del Tribunal de Apelaciones. Concluimos que el Mu-nicipio de San Juan le adeuda a J&J $132,716.10 por 402,170 pruebas realizadas en exceso a treinta y tres centavos cada una. Procede, además, devolver el caso al Tribunal de Primera Instancia para que celebre vista en cuanto al canon de arrendamiento y la partida por mate-riales y mantenimiento del equipo de laboratorio alegada-mente adeudados por el Municipio, según dicho foro correc-tamente lo ordenara.

Se dictará Sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez no intervino.

 Cabe aclarar que el 20 de septiembre de 2004, este Tribunal emitió una resolución, debido al paso de la tormenta Jeanne, en la cual suspendimos todos los términos dispuestos en las distintas leyes, reglas o reglamentos aplicables a los pro-cedimientos y trámites judiciales que vencieron, o vencían, entre el 15 y el 30 de septiembre de 2004, incluso. Dispusimos, entonces, que esos términos vencerían el 1 de octubre de 2004, razón por la cual el término para que el Municipio de San Juan (Municipio) presentar la moción de reconsideración, que originalmente vencía el vier-nes 17 de septiembre de 2004, se extendió.

 Según surge del expediente, Johnson & Johnson International, Inc. (J&J) originalmente planteó que el Municipio adeudaba el canon de arrendamiento de enero de 1996, lo cual resultó ser un error tipográfico. Posteriormente, J&J aclaró que el canon adeudado correspondía a junio de 1998, como señala la factura que se le envió al Municipio y está en el expediente.

 La enmienda dispone, en lo pertinente, que no remitir un contrato municipal a la Oficina del Contralor “no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido”. Quiere decir que dicho requisito es subsanable. “Sólo si ello no ocurre, presumiblemente, cabría ha-blar de la anulación del contrato.” Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718, 728 (2007).